


Overruled by............
H-103 C

Affirmed by C-602

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable Fred V. Meridith
Criminal District Attorney
Kaufman County
Kaufman, Texas

Dear Sir:

Opinion No. O-6940

Re: (1) Constitutionality of Articles 60a, 60a-1 and 60a-2, V. A. C. C. P.
(2) Legality of filing misdemeanor case in justice court in precinct other than that in which offense occurred;
(3) Authority of Commissioners' Court to transfer funds derived from fines and forfeitures to the general fund.

Certain copies of previous opinions of this department were sent to you in connection with your request for an opinion dated November 10, 1945. We are in receipt of your recent letter wherein you request our further opinion with respect to the above stated matters, and we quote from said letter, as follows:

"In re-reading my request you will find that I inquire concerning the constitutionality of Article 60a, Article 60a-1 and Article 60a-2, Code of Criminal Procedure, which statutes were passed by the 48th Legislature, Acts of 1943. They are to the effect that a constable and justice of the peace cannot charge and collect fees in misdemeanor cases except in the precincts in which the offense was committed.

"What I want to know is something about the jurisdiction of a constable and a justice of the peace - something about a case where a constable sees offense committed in his precinct and gives

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Hon. Fred V. Meridith, page 2

chase and apprehends the defendant in another precinct - where the case should be filed. My request for opinion sets out my brief on the law as best I could find it before the effective date of Article 60a, CCP, and it appears to me that we have a conflict between the old powers, jurisdiction, etc. of constables, and the power that he has now under the limited terms of the new Article 60a, 1 and 2.

"I might cite Code Criminal Procedure, Art. 217, requiring that the officer take a person arrested without a warrant before 'the nearest magistrate.' Take the case of the constable who chases a violator from his precinct across the precinct line into another precinct, or even into another county; where should the constable take such a prisoner and file his case? (Assuming, of course, that he is acting without a warrant.)

* * *

"If you will pardon my writing about another subject in this letter, I would like to refer to Opinion No. O-6889, addressed to me, approved November 3, 1945.

"I thought that I had made myself clear in my request that I was in serious doubt concerning whether the 'Road and Bridge General' fund in Kaufman County, was a 'constitutional' or a 'statutory' fund. My real question in that case is whether the Commissioners' Court has the authority to transfer money from this fund for purposes other than to pay half-costs of officers and for road and bridge purposes. The question may arise from time to time about transferring money from this 'Road and Bridge General' fund to the 'General Fund' in order to use such money for various purposes. If I knew whether the fund was a 'constitutional' or a 'statutory' fund, as pointed out and distinguished in Carroll vs Williams, 202 S. W. 504, I would be in position to advise the Commissioners' Court to what uses and purposes such money could be put."

Your inquiry raises the following propositions: (1) The constitutionality of Articles 60a, 60a-1 and 60a-2, Vernon's Annotated Code of Criminal Procedure, (2) Legality of filing misdemeanor case in justice court in a precinct other than that in which the offense occurred, and (3) Authority of the Commissioners' Court to transfer funds derived from fines and

Hon. Fred V. Meridith, page 3

forfeitures to the general fund.

(1) Constitutionality of Articles 60a, 60a-1 and
60a-2, C. C. P.

H. B. No. 342, Acts 48th Legislature, pp. 424-425 (Articles 60a, 60a-1 and 60a-2, V. A. C. C. P.), provides:

"An Act providing for the trial of persons in misdemeanor cases in Justice Precinct Courts only in the precinct in which the offense was committed, or in which the defendant resides; providing that in precincts where there is no duly qualified Justice Precinct Court, then trial shall be had in the next adjacent precinct in the same county which may have such Court; providing for trial in the next adjacent precinct in the same county upon disqualification for any reason of all Justices of the Peace in the precinct where the offense was committed; providing that, upon agreement between the attorney representing the State and each defendant or his attorney, the Justice of the Peace before whom such case is pending may, in his discretion, transfer such cause to the Justice Court of any other precinct in the same county, named in such agreement; providing that in any such misdemeanor case where two (2) or more defendants are tried jointly, such case may be tried in a Justice Court of the Precinct where the offense was committed or where any of the defendants reside; providing certain conditions under which constables shall receive fees; providing a penalty; repealing all laws and parts of laws in conflict herewith; and declaring an emergency.

"Be it enacted by the Legislature of the State of Texas:

"Section 1. No person shall be tried in any misdemeanor case in any Justice Precinct Court except in the precinct in which the offense was committed, or in which the defendant resides; provided that in any misdemeanor case in which the offense was committed in a precinct where there is no qualified Justice Precinct Court, then trial shall be had in the next adjacent precinct in the same county which may have a duly qualified Justice Precinct Court, or in the precinct in which the defendant may reside; provided that in any such misdemeanor case,

upon disqualification for any reason of all Justices of the Peace in the precinct where the offense was committed, such case may be tried in the next adjoining precinct in the same county, having a duly qualified Justice of the Peace; provided that, upon agreement between the attorney representing the State and each defendant or his attorney, which said agreement shall be reduced to writing, signed by said attorney representing the State and each defendant or his attorney, and filed in the Justice Court in which such misdemeanor case is pending, the Justice of the Peace before whom such case is pending may, in his discretion, transfer such cause to the Justice Court of any other precinct in the same county, named in such agreement; provided that in any misdemeanor case in the Justice Court in which two (2) or more defendants are to be tried jointly, such case may be tried in a Justice Court of the precinct where the offense was committed, or where any of the defendants reside.

"Sec. 1-A. No Constable shall be allowed a fee in any misdemeanor case arising in any precinct other than the one for which he has been elected or appointed, except through an order duly entered upon the Minutes of the County Commissioners' Court.

"Sec. 1-B. Any Justice of the Peace, Constable, Deputy Constable, Sheriff, or Deputy Sheriff either elected or appointed, violating any provision of this Act shall be punished by fine of not less than One Hundred Dollars ($100) nor more than Five Hundred Dollars ($500) and shall be subject to be removed from office by action brought in District Court for that purpose.

"Sec. 2. All laws and parts of laws in conflict herewith are hereby repealed to the extent of such conflict.

"Sec. 3. The fact that many persons are daily being prosecuted for misdemeanors in Justice Courts at considerable distances from their homes and from the precincts in which the offenses were committed,

Hon. Fred V. Meridith,   page 5

for the purpose of inducing such persons to plead
guilty, creates an emergency and an imperative pub-
lic necessity that the Constitutional Rule requiring
bills to be read on three several days in each House
be suspended, and said Rule is hereby suspended, and
this Act shall take effect and be in force from and
after its passage, and it is so enacted.

"Passed the House, April 7, 1943;  Yeas, 125,
Nays 18; passed the Senate, April 29, 1943, by a
viva voce vote.

"Approved May 6, 1943.

"Effective 90 days after May 11, 1943, date of
adjournment."

Section 1 of the above quoted Act (Article 60a) prescribes
certain limitations upon the authority of justice courts to try
misdemeanor cases, and it seeks to forbid the trial of any mis-
demeanor cases by justice courts outside and beyond the limita-
tions set forth.  Section 1-A of the Act (Article 60a-1) seeks
to limit the right of a constable to collect fees in connection
with misdemeanor cases arising in a precinct other than that in
which he was elected or appointed.  Section 1-B (Article 60a-2)
prescribes penalties in the nature of fines from $100 to $500
and removal from office which may be imposed upon justices of
the peace and other named officers who violate the provisions
of the Act.  When the Act is viewed as a whole, the manifest
purpose of the legislation is to prohibit or forbid justice
courts from trying misdemeanor cases when the case does not
arise or come into the justice court in a manner prescribed
in the Act.

Section 1, Article V, Constitution of Texas, in part,
provides:

"The judicial power of this State shall be
vested in one Supreme Court, in Courts of Civil
Appeals, in a Court of Criminal Appeals, in County
Courts, in Commissioners' Courts, in Courts of
Justices of the Peace, and in such other courts
as may be provided by law. . ."  (Underscoring
ours)

Hon. Fred V. Meridith,   page 6

Section 18, Article V, Constitution of Texas, in part, provides:

"Each organized County in the State now or hereafter existing, shall be divided from time to time, for the convenience of the people, into precincts, not less than four and not more than eight. The present County Courts shall make the first division. Subsequent divisions shall be made by the Commissioners' Court, provided for by this Constitution. In each such precinct there shall be elected at each biennial election, one justice of the peace and one constable, each of whom shall hold his office for two years and until his successor shall be elected and qualified; . . ."

Section 19, Article V, Constitution of Texas, in part, provides:

"Justices of the peace shall have jurisdiction in criminal matters of all cases where the penalty or fine to be imposed by law may not be more than for two hundred dollars, . . ."

We note that the following language contained in Article 60, C. C. P., is substantially the same as that quoted above from Section 19, Article V of the Constitution:

"Justices of the peace shall have jurisdiction in criminal cases where the fine to be imposed by law may not exceed two hundred dollars."

Under the above quoted constitutional provisions, the justice court has been made a part of the State's judicial system; the Constitution has prescribed a system of justice courts within every organized county in this State; and it has prescribed the subject matter of the criminal jurisdiction of each such court within the system of justice courts provided for each organized county in this State. However, it has been held that the Constitution does not invest the justice court with any exclusive criminal jurisdiction (Solon v. State, 5 Cr. R. 301). It has further been held that the criminal jurisdiction of the county court is concurrent with that of the justice court over misdemeanors cognizable in justice courts (Ballew v. State, 9 S. W. 765; Patterson v. State, 56 S. W. (2d) 458; Kugle v. State, 59 S. W. (2d) 417; Rose v. State, 184 S. W. (2d) 617). Thus,

because of the jurisdiction presently granted to the county court
(Art. 58, C. C. P), any criminal case where the fine which may be
imposed by law does not exceed two hundred dollars may be tried in
either the justice court or in the county court.   Regardless of
the limitations prescribed by Articles 60a, 60a-1 and 60a-2, with
reference to the trial of cases in the justice court, the juris-
diction and place of trial of a misdemeanor case cognizable in
justice court is not absolutely confined to a particular justice
court or precinct within the county.

In the case of Ex parte Von Koenneritz, (Cr. App.) 286 S. W.
987, the Court held that because of the provisions of Article 60,
C. C. P., (which are substantially the same as those in Section 19,
Article V of the Constitution with reference to the criminal juris-
diction of justice courts) a justice's trying of a misdemeanor case
where the offense, if committed, occurred in another precinct in
the county, would not be void.   The court also held that if the
defendant had the undisputed right on a proper motion to have his
case transferred to the justice precinct where the offense occurred,
such fact would not render the trial of the cause in another pre-
cinct in the county void.   We quote from the above mentioned case
as follows:

> "It is appellant's contention that the justice of
> the peace in precinct No. 6 is without jurisdiction to
> try said case, in view of the fact, as appellant con-
> tends, that the offense was committed, if at all, in
> precinct No. 3 in Travis County.   We do not agree with
> applicant's contention that the alleged anticipated
> trial of the applicant before the justice court of
> precinct No. 6 would be a mere nullity.   His action
> in the event of a trial, in our judgment, would not
> be void.   Under the plain terms of the statute itself,
> the justice of precinct No. 6 has jurisdiction of the
> subject matter of the suit.   Article 60, 1925 Revision
> C. C. P.
>
> "(2)   If it be conceded that applicant would have
> the right upon proper motion to have the case trans-
> ferred to the justice precinct in which the alleged
> offense occurred, which question it is unnecessary to
> decide in this case, it would still follow that such
> right would not render the trial of the cause in jus-
> tice precinct No. 6 void.   Suppose the right to be

Hon. Fred V. Meridith, page 8

tried in the precinct where the offense was committed was undisputed, yet for some reason applicant should not see fit to assert this right and should plead guilty in a justice court situated in a precinct different from the one in which the offense was committed; could it be contended that a valid judgment could not be rendered against him under these conditions? We think not. The Court of Civil Appeals in this state has, we think, correctly stated the rule as follows:

"'The word 'void' can with no propriety be applied to a thing which appears to be sound, and which while in existence can command and enforce respect, and whose infirmity cannot be made manifest. If a judgment rendered without in fact bringing the defendants into court cannot be attacked collaterally on this ground unless the want of authority over them appears in the record, it is no more void than if it were founded upon a mere misconception of some matter of law or of fact occurring in the exercise of an unquestionable jurisdiction. In either case the judgment can be avoided and made functus officio by some appropriate proceeding instituted for that purpose; but, if not so avoided, must be respected and enforced.' Dunn v. Taylor, 42 Tex. Civ. App. 241, 94 S. W. 347."

Thus, under the holding of the above cited case, a justice court has the authority, under the provisions of Article 60, C. C. P. (substantially the same as Sec. 19, Art. V of the Constitution), to try a case which arose in another precinct in the county, even though the defendant had the undisputed right to have his case tried in another precinct. Articles 60a, 60a-1 and 60a-2, however, would forbid the justice court to try a misdemeanor case which arose in the county, but did not arise in that particular justice precinct, or was not the precinct of the defendant's residence or did not come within some of the other provisions of Article 60a with reference to transferring cases, regardless of whether the defendant desired to consent to his being tried in said precinct.

The question logically arises as to whether the Act, in its operation, regulates venue or is jurisdictional in effect. We point out here that venue relates to the exercise of jurisdiction (Taylor v. State, 197 S. W. 196); however, it has been held that in criminal cases, the terms "venue" and "jurisdiction" are not synonymous, and that in a criminal case, "venue", unlike jurisdiction, may be acquired by consent

Hon. Fred V. Meridith,    page 9

(Williams v. State (Cr. App.) 170 S. W. (2d) 482; Taylor v. State, 197 S. W. 196). Under the operation of this Act, even though the defendant desired to consent to being tried in a particular precinct in the county, if the case were not brought in a manner within the limitations prescribed, the justice of the peace would be forbidden to try the case. If he did try such case, he would be subject to a fine from $100 to $500 and removal from office. Thus, it is our opinion that this Act goes further than regulating venue or granting privileges to a defendant with reference to the place of his trial, for the Act goes the extent, in certain instances of prohibiting jurisdiction of the justice court, even though the defendant may consent to venue, when jurisdiction of the subject matter in such case, in view of the holding in the case of Ex parte Von Koenneritz, was granted to said court by the Constitution.

In this connection, we call your attention to the following language in the Court's opinion in the case of Brady v. State, 63 S. W. 327:

". . . The constitution confers jurisdiction upon the justice courts throughout the county of civil and criminal matters to certain amounts, and the legislature is not authorized to oust them of such jurisdiction. . ."

". . . Whether the legislature mentioned the question of jurisdiction as to justice courts or not, they still retain jurisdiction where the punishment was by fine not exceeding $200. . ."

In discussing the provisions of Section 19 of Article V of the Constitution, in the case of Ginnochia v. State, 18 S. W. 82, the Court said:

". . ". . . It will be observed . . . that the words employed conveying jurisdiction are clear, strong, and entirely unambiguous. . ."

". . . The peculiar quality of a constitutional court, or of any other constitutional establishment, is this: that it is not susceptible of change in its fundamental principles, except in some prescribed mode. . ."

". . . It is clear that the legislature had not the competency to impair the essential nature or jurisdiction of any of the constitutional courts."

Hon. Fred V. Meridith,   page 10

In view of the above and foregoing, it is our opinion that H. B. No. 342, Acts 48th Leg. (Articles 60a, 60a-1, 60a-2) as to its purpose and in its operation, contravenes the jurisdiction of the justice court granted to said court by Section 19 of Article V of the Constitution and is therefore void. Since we hold that the Act is unconstitutional as to its general purpose, we do not deem it necessary to consider separately the constitutionality of each provision of the Act.

In our Opinion No. 0-5411, written prior to the effective date of the above mentioned Act, reference was made to the future application of the Act with respect to certain fact situations. In view of our holding herein, we hereby overrule said opinion only insofar as it conflicts herewith.

2. **Legality of filing misdemeanor case in justice court in precinct other than that in which the offense occurred.**

In your letter, you inquired as to the proper place for a constable to take an offender and file his case in a situation where "the constable who chases a violator from his precinct across the precinct line into another precinct, or even into another county", where the arrest was made without a warrant.

With reference to the situation above referred to, if the arrest were made in another county without a warrant, we point out that this department held in Opinion No. 0-1240, that a constable has no power to make an arrest outside of his county without a warrant, and that such arrest made without a warrant is void. We quote from said opinion, as follows:

"It is clear. . . that a constable being a 'peace officer' as that term is defined in Article 36, C. C. P., may execute a warrant of arrest in any county in Texas. It was held in the case of Hanson v. State, 49 S. W. (2d) 463 that Article 223, (C. C. P.) supra, does not extend the right of a peace officer to make an arrest outside of his county in the absence of a warrant, and that an arrest made without a warrant is void."

With reference to the authority of a constable to make an arrest without a warrant, in a precinct within his county other than that in which he was elected or appointed, we quote from our opinion No. 0-3969, as follows:

Hon. Fred V. Meridith, page 11

"You are respectfully advised that it is the opinion of this department that a constable may lawfully make an arrest in a precinct other than his own in his county without a warrant when he would be authorized by law to make the arrest without warrant in his own precinct; and that while it is his primary duty under Article 37, V. A. T. C. C. P., to preserve the peace within his own precinct, still his jurisdiction is co-extensive with the limits of the county. It also follows that the constable would have authority to execute warrants of arrest anywhere in his county."

Your question as to where a constable should file his complaint when he makes an arrest without a warrant in the county, but in a precinct other than that in which the offense was committed, is rather broad. However, it is our opinion that the trial of a misdemeanor case in any court in the county which has jurisdiction of the subject matter would be valid. As pointed out in a previous portion of this opinion, the trial of such case in a justice court in the county, but in a precinct other than that in which the offense occurred, would not be void. (Ex parte Von Koenneritz, supra) Likewise, a judgment rendered in the trial of such case in the precinct in which the offense was committed would be valid. Moreover, the trial of such case in the county court would be valid since the county court has concurrent jurisdiction with the justice court over misdemeanor cases cognizable in the justice court.

### 3. Authority of the Commissioners' Court to transfer funds derived from fines and forfeitures to the general fund.

With respect to the above stated matter, this department held in Opinion No. O-6605 that it was mandatory that funds derived from fines and forfeitures be used on roads and bridges. We quote from said opinion as follows:

"Section 24 of Article 16 of our State Constitution states:

"'The Legislature shall make provision for laying out and working public roads, for the building of bridges, and for utilizing fines, forfeitures, and convict labor to all these purposes.'

"In view of the foregoing constitutional provision
it is further our opinion that money now in the Road
and Bridge Fund derived from fines and forfeitures
cannot be transferred. To hold otherwise would not be
in accord with the above quoted constitutional provision
which makes it mandatory that such money be used on roads
and bridges."

Although the money collected for fines and forfeitures
is not a constitutional fund in the sense that the money is
derived from a tax levy for constitutional purposes, such as
those funds referred to in Carroll v. Williams, 202 S. W. 504,
yet the Constitution does specify the purpose for which the
money derived from fines and forfeitures shall be used. You
are therefore advised that money collected by fines and
forfeitures cannot be transferred or used for purposes other
than "for laying out and working public roads" and "for the
building of bridges." (Sec. 24, Art. 16, Constitution of
Texas) It is therefore our opinion that the funds inquired
about cannot be transferred to the general fund.

We trust that the above and foregoing satisfactorily
answers your inquiries.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

J. A. Ellis
Assistant

JAE:TJM

APPROVED DEC 22, 1945

FIRST ASSISTANT
ATTORNEY GENERAL

